ACCEPTED
12-14-00254-CV
TWELFTH COURT OF APPEALS
TYLER, TEXAS
3/26/2015 11:26:53 AM
CATHY LUSK
CLERK

APPEAL NO. 12-14-00254-CV

# IN THE COURT OF APPEALS
# TWELFTH APPELLATE DISTRICT
# TYLER, TEXAS

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS
3/26/2015 11:26:53 AM
CATHY S. LUSK
Clerk

Neurodiagnostic Tex, L.L.C.
Appellant,

v.

Robert "Josh" Pierce and Synergy IOM, L.L.C.,
Appellees.

Appealed from the 7th Judicial District Court of
Smith County, Texas, Cause No. 13-3357-A
the Honorable Kerry L. Russell Presiding

## APPELLANT'S REPLY BRIEF
## TO APPELLEE SYNERGY IOM, LLC'S OPENING BRIEF

Wigington & Dankesreiter, L.L.P.
Eric F. Dankesreiter
State Bar No. 00796434
Debra S. Crafton
State Bar No. 24050458
3010 Broadmoor Lane
Flower Mound, Texas 75202
Tel. (972) 691-3677
Fax (972) 691-5688
Attorneys for Appellant,
Neurodiagnostic Tex, L.L.C.

**Appellant requests oral argument**

# TABLE OF CONTENTS

INDEX OF AUTHORITIES..........................................................iii

SUMMARY OF THE ARGUMENT...............................................1

ARGUMENT ........................................................................1

I.   **Reply Point No. 1**: There had not been an adequate time for discovery at the time summary judgment responses were due.............................1

    A. **Sub-Point 1**: NeuroTex was diligent in pursuing discovery under the Scheduling Order..............................................................1

    B. **Sub-Point 2:** The discovery issues raised in NeuroTex's brief were before the trial court................................................................2

    C. **Sub-Point 3:** NeuroTex's motion and brief are sufficient...............4

    D. **Sub-Point 4:** The trial court abused its discretion in denying the continuance.............................................................................5

II.  **Reply Point No. 2:** The trial court erred in failing to grant NeuroTex's Special Exceptions.......................................................10

III. **Reply Point No. 3:** Synergy's late-filed summary judgment evidence should not have been considered by the trial court............................10

IV.  **Reply Point No. 4:** The Covenant Not to Compete is ancillary to an otherwise enforceable agreement.....................................................11

    A. **Sub-Point 1**: Training is an interest worthy of protection.............11

    B. **Sub-Point 2:** Training is reasonably related to the interest in restraining competition....................................................15

    C. **Sub-Point 3:** Surgeon preferences are interests worthy of protection..................................................................................15

V. **Reply Point No. 5**: The restraints included in the noncompete are in compliance with the Act..................................................................16

VI. **Reply Point No. 6**: The Court shall reform the covenant if restraints are unreasonable..................................................................18

VII. **Reply Point No. 7**: Damages are not foreclosed by statute on the claim for tortious interference..................................................................19

PRAYER..................................................................22

CERTIFICATE OF SERVICE..................................................................23

CERTIFICATE OF COMPLIANCE..................................................................23

## INDEX OF AUTHORITIES

**CASES:**

*Alex Sheshunoff Mgmt. v. Johnson*, 209 S.W.3d 644, 648 (Tex. 2006).....11, 12, 14

*Arabesque Studios, Inc. v. Academy of Fine Arts Int'l*, 529 S.W.2d 564, 569 (Tex.App.—Dallas 1975, no writ) ..................................................................8, 9

*Bennett v. Coghlan*, No. 01-04-00104-CV, 2007 WL 2332969, *4 n. 7 (Tex.App. – Houston [1st Dist.] August 16, 2007, pet denied)..................................................................20

*BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex.2002) ...........1

*Brewer & Pritchard, P.C. v. Johnson*, 167 S.W.3d 460, 469 (Tex. App. – Houston [14th Dist.] 2005)..................................................................2

*Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 688 (Tex. 2002)...10

*Correa v. Houston Surgical Assistant Svcs., Inc.*, No. 14-12-01050-CV, 2013 WL 3958499 at *6-7 (Tex.App.—Houston [14th Dist.] July 30, 2013, no pet.)(mem.op.)..................................................................16

*Creel v. Dist. Attorney for Medina County*, 818 S.W.2d 45, 46 (Tex.1991).........6

*Daytona Grp. Of Tex., Inc. v. Smith*, 800 S.W.2d 285, 290 (Tex.App.—Corpus Christi 1990, writ denied). ......................................................................13, 14

*Evans World Travel, Inc. v. Adams*, 978 S.W.2d 225, 231 (Tex.App.—Texarkana 1998, no pet.) ....................................................................................14

*Ferrant v. Graham Associates, Inc.*, No. 02-12-00190-CV, 2014 WL 1875825, at *8 (Tex. App.—Fort Worth May 8, 2014, no pet.)(mem. op.)........................20

*Gray Wireline Serv., Inc. v. Cavanna*, 374 S.W.3d 464, 470 (Tex.App.-Waco 2011, no pet.). .................................................................................19

*Hospital Consultants, Inc. v. Potyka*, 531 S.W.2d 657, 662 (Tex.Civ. App.—San Antonio 1975, writ ref'd n.r.e.).....................................................13

*Hutchison v. Pharris*, 158 S.W.3d 554, 564 (Tex.App.-Fort Worth 2005, no pet.) ... ..........................................................................................20

*In re Ramirez*, 994 S.W.2d 682, 683 (Tex.App.—San Antonio 1998, orig. proceeding) ...........................................................................6

*Jampole v. Touchy*, 673 S.W.2d 569, 573 (Tex. 1984) (emphasis added)...........7

*Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004)...........1

*Light v. Centel Cellular Co.*, 883 S.W.2d 642, 647 (Tex.1994)..............11, 12, 15

*Malooly Brothers, Inc. v. Napier*, 461 S.W.2d 119, 120 (Tex.1970) ................19

*Marsh USA Inc. v. Cook*, 354 S.W.3d 764 (Tex.2011)...........................11, 15

*McAlester Fuel Co. v. Smith Int'l, Inc.*, 257 S.W.3d 732, 737 (Tex.App.-Houston [1st Dist.] 2007, pet. denied) ...................................................20

iv

*McKelvy v. Barber*, 381 S.W.2d 59, 62 (Tex. 1964) ......................................20

*Nelson v. PNC Mortgage Corp.*, 139 S.W.3d 442, 445 (Tex.App.—Dallas 2004, no pet.) ..........................................................................6

*Saye v. Garrar*, 204 S.W. 684, 686 (Tex.Civ. App.—Texarkana 1918, writ ref'd)..9

*Sentinel Integrity Solutions, Inc. v. Mistras Grp., Inc.*, 414 S.W.3d 911, 920 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) ..........................................19

*United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958) ..................7

*Welsh v. Morris*, 16 s.W.744, 745 (1891)..............................................9

**RULES:**

TEX. R. APP. P. 38.3 ......................................................................20

TEX. R. CIV. P. 166a(c) ..................................................................5

TEX. R. CIV. P. 166a(g) ..................................................................4

TEX. R. CIV. P. 166a(i) ..................................................................5

**STATUTES:**

TEX. BUS. & COM. CODE §15.50(a)................................................14, 17

TEX. BUS. & COM. CODE § 15.51(c)............................................7, 18, 21

## SUMMARY OF THE ARGUMENT

Appellant files this Reply to clarify select legal arguments and factual inaccuracies set forth in Appellee's Opening Brief, without waiving any of the arguments made in Appellant's Brief ("App. Brief").

## ARGUMENT

**Reply Point No. 1:** **There had not been an adequate time for discovery at the time summary judgment responses were due.**

As Appellee ("Synergy") recognized in its Brief, whether an adequate time for discovery has occurred is case specific. Appellant ("NeuroTex") set forth the nonexclusive factors used by Texas courts in deciding whether a trial court abused its discretion in denying a motion for continuance seeking additional time to conduct discovery. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004) citing *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex.2002). Appellee wholly ignores these factors in its Opening Brief ("Response").

### Sub-Point 1: NeuroTex was diligent in pursuing discovery under the Scheduling Order.

In its Brief, NeuroTex applied the evidence before the Court to the established factors to show that length of time the case has been on file, the materiality and purpose of the discovery sought, and that it exercised due diligence

1

in seeking to obtain the discovery. (App. Brief 17-20); *see also Brewer &
Pritchard, P.C. v. Johnson*, 167 S.W.3d 460, 469 (Tex. App. – Houston [14th
Dist.] 2005).

It is clear that, contrary to Synergy's argument, NeuroTex's recitation of
the deadlines set forth in the Scheduling Order is not a complaint of the time
limitations, but to show that the trial court abused its discretion in denying the
motion for continuance as, given the length of time the case had been on file and
the deadlines in the trial court, NeuroTex had exercised "due diligence" in
attempting to obtain the needed discovery. *Id.*

**Sub-Point 2: The discovery issues raised in NeuroTex's brief were
before the trial court.**

As an initial matter, Synergy attempts to mislead this Court by stating that
the depositions NeuroTex referred to in its motions for continuance had occurred.
(Response 7). In fact, they had not occurred by the time NeuroTex was required to
submit its evidence to the trial court in its summary judgment responses. The
motions for continuance filed by NeuroTex show that the deposition of Dr. Brent
Alford was set for Tuesday, June 10, 2014, and Dr. George Cravens's deposition
was scheduled for June 13, 2014. (CR 769; 775). NeuroTex's summary judgment
responses were due and submitted on June 5, 2014. (CR 854; 1038).

Furthermore, in the motion for continuance, denied by the trial court,

2

NeuroTex not only argued that it needed the deposition testimony of Dr. Brent Alford, it also argued that the documentary evidence it was seeking to compel would enable it to support its claims for damages, specifically lost profits. (CR 770, 776). Synergy falsely claims that neither the list of discovery or arguments related to this discovery were presented to the trial court. A cursory review of the list of discovery sought, included in NeuroTex's Brief along with the record cites to each item, clearly shows that a motion to compel these very specific documents was pending before the trial court. (App. Brief 17-20). Furthermore, these documents would enable NeuroTex to support its claim for damages, specifically lost profits, as such documents included detailed information regarding insurance payments made to Synergy for services provided by Pierce (CR 128), as well as Synergy's detailed monthly Profit and Loss statements and general ledger. (*Id.*). Clearly Synergy's failure to respond to discovery resulted in a lack of evidence, thus the need for both an order compelling discovery and a continuance.

Synergy also argues that NeuroTex never "raised the same complaint" in the trial court, thus it cannot now complain about the lack of discovery. This is an appeal of a summary judgment where the trial court's failure to rule on multiple motions related to discovery is key. At the time NeuroTex's summary judgment responses were due there had been no denial of NeuroTex's motion to compel, in fact, the trial court never ruled on that motion. Thus, NeuroTex's discovery

3

arguments were "raised" in its motion to compel and motions for continuance which were before the trial court and cited to as part of the record. (CR 99-139; 769-770; 776).

### Sub-Point 3:   NeuroTex's motion and brief are sufficient.

Synergy next argues that NeuroTex's motion for continuance and its Brief, are insufficient; this is inaccurate and misleading. First, Synergy claims that NeuroTex, "merely stated a need for evidence of 'lost profits,' without specifics." (Response 8). To the contrary, in its motion, NeuroTex explained that it had filed suit against Synergy for tortiously interfering with an employment agreement and was seeking documents and depositions which would enable it to support its claims for damages, specifically lost profits, as well as evidence of intentional interference. (CR 776). NeuroTex argued that the information sought was vital to its summary judgment responses, and that it had been diligent in seeking such evidence. (CR 776).

Texas Rule of Civil Procedure 166a(g) permits the trial court to deny a summary judgment or order a continuance to permit discovery to be obtained when a nonmovant can make an affidavit of proof showing why he cannot present facts to justify his opposition. NeuroTex's verified motion for continuance satisfies this requirement.

4

Likewise, NeuroTex's Brief sets forth over six pages of analysis as to why denial of the continuance was improper and addressed the factors used in deciding whether a trial court has abused its discretion in making such a ruling. (App. Brief 15-21). In its response, Synergy misstates the facts and ignores the prevailing law, the analysis, and NeuroTex's evidence. NeuroTex's brief is more than adequate to preserve this point for appeal.

**Sub-Point 4: The trial court abused its discretion in denying the continuance.**

Synergy covers a wide-range of topics in trying to find support for the trial court's decision to deny NeuroTex's motion for continuance. As NeuroTex's Brief and this reply show, it cannot do so.

The first argument, that the motion for summary judgment was timely filed, is not persuasive.

Secondly, Synergy claims that the "adequate time for discovery" provision of Rule 166a(i) does not apply to the traditional motion. While it is true that Rule 166a(i) does not apply to such a motion, the provisions of 166a(c) clearly provide for the ability to present controverting evidence. TEX. R. CIV. P. 166a(c). In a case involving outstanding discovery motions before the Dallas Court of Appeals, the Court reversed the decision of a trial court which granted a motion for summary judgment under Tex. R. Civ. P. 166a(c), holding that appellee was

5

entitled to a continuance because the trial court had not ruled on the pending discovery motions. *Nelson v. PNC Mortgage Corp.*, 139 S.W.3d 442, 445 (Tex.App.—Dallas 2004, no pet.). Like NeuroTex in the case at bar, the appellee in *Nelson* had made the trial court aware of the fact that it had not ruled on his pending motion to compel discovery. *Nelson*, 139 S.W.3d at 445. In rendering its decision, the Dallas Court stated that, not only is a trial court required to consider and rule upon a motion within a reasonable time, but the "fundamental requirements of due process demand that a party to a cause be given an opportunity to be heard." *Nelson*, 139 S.W.3d at 445 citing *In re Ramirez*, 994 S.W.2d 682, 683 (Tex.App.—San Antonio 1998, orig. proceeding) and *Creel v. Dist. Attorney for Medina County*, 818 S.W.2d 45, 46 (Tex.1991). The Court explained that the trial court's failure to rule on the pending discovery motions foreclosed the possibility of appellee "exercising his right to obtain reasonable discovery before summary judgment was rendered against him." *Nelson*, 139 S.W.3d at 446.

Synergy next argues that NeuroTex did not need any information it sought in discovery and cites to an incomplete list of the discovery missing. (Response 10). NeuroTex clearly identified the documents it was seeking and explained the relevance in both of its motions for continuance. (App. Brief 15-21).

6

The law is clear that the primary objective of discovery is to ensure that lawsuits are "decided by what the facts reveal, not by what facts are concealed." *Jampole v. Touchy*, 673 S.W.2d 569, 573 (Tex. 1984) (emphasis added). As noted by the United States Supreme Court, the purpose of the modern discovery and pretrial procedures are to "make a trial less a game of blindman's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958). Synergy failed to produce any documents in response to NeuroTex's discovery requests and responded to the majority of the requests for production stating, "Synergy is not responding to this request." (CR 104). It is disingenuous for Synergy, after refusing to produce any documentation whatsoever, to now claim that NeuroTex should have produced its own documents.

Without legal or evidentiary support, Synergy summarily argues that the evidence sought in the continuance was unnecessary as damages were "absolutely barred by the Act" as a result of unreasonable restraints. Synergy's reliance is misplaced. First, there has been no determination by the trial court that the geographic restrictions are unreasonable or impose a greater restraint than necessary; and, second, even upon a finding of unreasonableness, the court must reform the covenant. Tex. Bus. & Comm. Code §15.51(c). The trial court made no such finding, nor did they reform the covenant. Lastly, Synergy has presented

7

no legal basis to support its theory that damages for tortious interference are foreclosed by the Covenant Not to Compete Act. *See* discussion *infra* Reply Point 7.

Next, Synergy ignores the evidence that was before the Court and makes the all-encompassing statement that NeuroTex should have presented its own evidence of damages but did not. This is simply untrue. (App. Brief 67-68). To the contrary, Synergy's arguments, combined with the evidence presented by NeuroTex, do nothing more than create a fact issue, which precludes summary judgment.

Although it has repeatedly denied the fact that NeuroTex suffered damages, Synergy refused to produce documents in response to NeuroTex's request for production. (CR 104). Now Synergy argues that its financial information is immaterial. Its cites to testimony regarding loss of business are not evidence that there were no damages, instead, such testimony supports the need for ongoing discovery. (Response 11-12).

In its brief, NeuroTex explained why evidence of Synergy's profits are relevant to the damage it suffered here. (App. Brief 59, 67). In an attempt to distance itself from the prevailing law, Synergy narrowly applies the facts of *Arabesque Studios, Inc. v. Academy of Fine Arts Int'l*, 529 S.W.2d 564, 569

(Tex.App.—Dallas 1975, no writ) to the facts before this Court. It claims that because the departing employee in *Arabesque* "lured away" the customers, evidence of the new employer's profits would only apply if NeuroTex shows that Pierce "lured away" its business. (Response 12-13). To the contrary, *Arabesque* stands for the age-old proposition of law that it is proper for the jury to consider profits made by the subsequent employer of the defendant inasmuch as these profits may have, in some part, accrued to plaintiff in the absence of the breach. *Arabesque,* 529 S.W.2d at 569, citing *Welsh v. Morris,* 16 s.W.744, 745 (1891) and *Saye v. Garrar,* 204 S.W. 684, 686 (Tex.Civ. App.—Texarkana 1918, writ ref'd).

Finally, Synergy claims that Pierce stopped working for NeuroTex *months after* NeuroTex was no longer being assigned by hospitals to Dr. Alford's and his group's surgical cases, thus, again, its documentary information is unnecessary. (Response 13). This is simply false. To the contrary, Pierce performed IOM services for Dr. Alford through August of 2013, while Pierce began talking to Alford about working for him in September. (CR 278; 1022-23).

None of the arguments relied upon by Synergy support the trial court's ruling and the trial court erred in refusing to grant a continuance of the summary judgment hearing.

9

**Reply Point No. 2:** **The trial court erred in failing to grant NeuroTex's Special Exceptions.**

NeuroTex reurges its arguments, as set forth in its summary judgment response and Special Exceptions cited to therein.

**Reply Point No. 3:** **Synergy's late-filed summary judgment evidence should not have been considered by the trial court.**

In its Response, Synergy has failed to address the applicable standard for determining whether a motion for leave to file a late summary-judgment response should be granted. *Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 688 (Tex. 2002). Is precedent would show, it is Synergy's burden to establish "good cause" for failing to timely respond to the motion for summary by showing that (1) the failure to respond was not intentional or the result of conscious indifference, but the result of accident or mistake, and (2) allowing the late response will occasion no undue delay or otherwise injure the party seeking summary judgment. *Carpenter*, 98 S.W.3d at 688. Instead of meeting its burden, Synergy tries to shift it to *NeuroTex*, claiming that NeuroTex does not state how or why it was prejudiced, or what was objectionable. (Response 17). This is not the law. Synergy does not even attempt to make a showing of good cause for its failure, or even provide an explanation as to why this evidence, and supplemental briefing, was not submitted timely.

**Reply Point No. 4:**     **The Covenant Not to Compete is ancillary to an otherwise enforceable agreement.**

There is no dispute that, to be "ancillary to or part of" an otherwise enforceable agreement: 1) the consideration given by the employer in the agreement must be reasonably related to the interest the employer is trying to protect with the covenant; and, 2) the covenant must have been designed to enforce the employee's consideration or return promise. *Marsh USA Inc. v. Cook*, 354 S.W.3d 764 at 773 (Tex.2011)

As to the first element, Synergy admits that NeuroTex provided Pierce consideration in the form of: (1) training; (2) customer information, including surgeon preference; 3) pricing; and 4) technique. (Response 22).

**Sub-point 1:     Training is an interest worthy of protection.**

The initial dispute here, however, is Synergy's argument that the training Pierce received was not an interest worthy of protection since NeuroTex "merely" paid the cost of Pierce's certification training. (CR 822-23, 834-35). (Response 23).

Synergy cites to *Alex Sheshunoff Mgmt. v. Johnson*, 209 S.W.3d 644, 650 (Tex. 2006), for the proposition that the payment of money is not a protectable interest. (Response 23). This is not what the Supreme Court said in *Sheshunoff*. In the portion of *Sheshunoff* relied upon by Synergy, the Court is evaluating

whether the consideration given in a noncompete was illusory. *Sheshunoff*, 209

S.W.3d at 650. The actual statement by the Court was as follows:

> "[T]he consideration given by the employer in the otherwise enforceable agreement must give rise to the employer's interest in restraining the employee from competing," [*Light v. Centel Cellular Co.*, 883 S.W.2d 642, 647 (Tex.1994)], and if this particular consideration is never provided by the employer, the covenant not to compete cannot be enforced. Absent such consideration, the covenant is not "ancillary to or part of the otherwise enforceable agreement" under the Act as interpreted by Light. To hold otherwise would mean that an employer could enforce a covenant merely by promising to pay a sum of money to the employee in the agreement, a result inconsistent with Light's requirements that the covenant must give rise to the employer's interest in restraining the employee from competing and the covenant must be designed to enforce the employee's consideration or return promise. *Sheshunoff*, 209 S.W.3d at 650 (emphasis added).

Synergy's recitation of the facts is also flawed. Although Synergy points

out in its Response that Pierce paid for the cost of training, Pierce himself testified

that NeuroTex paid for him to receive his training. (CR 911, 165). Furthermore, in

addition to paying for the training, Boldery testified that she had "spent

considerable time training and preparing Pierce for his board examinations." (CR

856-57; 1110-1111). This is uncontroverted.

Synergy next argues that the training provided by NeuroTex was not an

interest worthy of protection and relies upon several cases—all of which are

misapplied and all of which fail to support Synergy's argument.

First, Synergy makes the inaccurate statement that NeuroTex is claiming "all work-related training" is worthy of protection. (Response 23, citing *Daytona Grp. Of Tex., Inc. v. Smith*, 800 S.W.2d 285, 290 (Tex.App.—Corpus Christi 1990, writ denied)). As the facts before this Court show, Pierce's IOM training was very specialized. The ruling in *Daytona* is inapplicable to the facts here as there the court determined that the training program was not unique as it consisted primarily of video tapes and other aids which were purchased on the open market, and did not "encompass any novel or special training." *Daytona*, 800 S.W.2d at 290-91. It is important to note that the *Daytona* Court specifically explained that, "This case does not present the situation where a highly trained employee with unique skills leaves to compete with a former employer." *Id.* at 291. Such is the case here.

Next, Synergy relies on a case heard before the San Antonio Court of Appeals, and claims that the case stands for the general proposition that "training given to emergency room physicians was not a protectable interest because it belongs to the employee." (Response 24, citing *Hospital Consultants, Inc. v. Potyka*, 531 S.W.2d 657, 662 (Tex.Civ. App.—San Antonio 1975, writ ref'd n.r.e.)). This case was fact specific, and in *Potyka* the "training" received by the physicians was considered general knowledge; the *Potyka* court explained that the

result might be different if the training methods and procedures were developed by and known exclusively to the employer. *Id.*

Synergy's last case found that the "general housekeeping" training in a travel agency was not specialized, so it did not rise to the "level required in order for one to perform the core job duties expected which should be protected by restrictive covenants." *Evans World Travel, Inc. v. Adams,* 978 S.W.2d 225, 231 (Tex.App.—Texarkana 1998, no pet.). Again, this has no value to its argument.

None of the cases cited to by Synergy apply to the very specialized training received by Pierce from NeuroTex in becoming one of only 300 triple-board certified technicians in the country. (CR 894-95). NeuroTex has provided both this Court and the trial court with specific evidence of the type of training which occurred here, including testimony from Pierce that the training he received relates directly to the work that he is now doing for Synergy. (CR 846-57; 918; 920; 1110-11; 1172; 1174). While Synergy dismisses this work, the evidence shows that this is just the type of specialized training courts have found protectable. *Daytona,* 800 S.W.2d at 290-91.

Synergy relies heavily on the fact that NeuroTex's "advancement of funds" has been fully repaid. (Response 26). This is irrelevant, as the Court in *Sheshunoff* explained, a covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement *at the time the agreement is made.* 209

14

S.W.3d at 651; *see also* Tex. Bus. & Comm. Code § 15.50(a). Any subsequent performance under the agreement is immaterial.

**Sub-point 2:** **Training is reasonably related to the interest in restraining competition.**

Without any case law to support its proposition, Synergy now claims that the covenant not to compete must be "designed to enforce Pierce's promise regarding training." (Response 27). This is an incorrect analysis of the applicable law. As explained in Appellant's Brief in more detail, the consideration given by the employer in the agreement (training; proprietary information; financial information; customer information, and procedures and techniques used by NeuroTex) must only be **reasonably related** to the interest *in restraining competition* with the employer. (App. Brief 43-48; *see also* CR 855,859; 1109-1113); *Marsh,* 354 S.W.3d 764 at 775 (*overruling Light,* 883 S.W.2d 642 at 647). Clearly, NeuroTex was seeking to protect such information from being used against it by a competitor such as Synergy. Furthermore, Pierce has acknowledged receiving such confidential information. (CR 918; 1172).

**Sub-point 3: Surgeon preferences are interests worthy of protection.**

Although Synergy makes multiple arguments challenging the interests worthy of protection, NeuroTex's arguments in its Brief sufficiently address these claims.

15

However, NeuroTex supplements its argument here regarding surgeon preferences. In its Response, Synergy makes the blanket statement that surgeon preferences are not an interest worthy of protection as Dr. Alford is free to disclose to anyone what he likes and dislikes a monitoring technician to do in surgery. (Response 36). With no legal basis, Synergy surmises that "a surgeon's preferences are not an interest of Appellants that is worthy of protection via a covenant." *Id.* This is a misstatement of the law.

The Houston Court of Appeals addressed this issue and determined that information about surgeon preferences is confidential information that gives an employer a competitive advantage as there is "no need to ask such questions during surgery, thus the employee is a partner to the surgeon and makes the surgery easier." *Correa v. Houston Surgical Assistant Svcs., Inc.,* No. 14-12-01050-CV, 2013 WL 3958499 at *6-7 (Tex.App.—Houston [14th Dist.] July 30, 2013, no pet.)(mem.op.).

**Reply Point 5:** **The restraints included in the noncompete are in compliance with the Act.**

**Time Restraints.** The covenant at issue here seeks to restrain Pierce from competing within a certain region for five years, and from diverting or attempting to divert any existing or future business of NeuroTex for a period for two years. (CR 867-868; 1121-1122). While this Court has found covenants for two to five

16

to be a reasonable restriction, it is particularly reasonable in this instance as more fully explained in Appellant's Brief. (App. Brief 50-51).

**Geographic Restraints.** Synergy's argument that the geographic restrictions in the noncompete are unreasonable is overbroad. The evidence presented to the trial court shows that, in 2005, *at the time the agreement was made*, NeuroTex either worked in or had prospective business in the counties included within the covenant not to compete. (CR 855-861; 1109-1115); *see* Tex. Bus. & Comm. Code § 15.50(a). Consequently, Pierce agreed not to compete with NeuroTex in the counties in which the parties either knew, or anticipated he would work while employed by NeuroTex. (CR 867; 1121). This restraint on the geographic area included in the covenant is reasonably limited as the case law cited in Appellant's Brief dictates. (App. Brief 52-55).

**Scope of Activities.** NeuroTex has thoroughly set forth the reasonableness of this restraint in its Brief. Pierce was an IOM technician for NeuroTex; he is an IOM technician for Synergy. NeuroTex is seeking to prevent Pierce from performing IOM services for its competitors, within a certain area and for a certain time. Synergy's argument that this is overbroad is nonsensical. It is important to remember that *at the time the agreement was made,* both NeuroTex and Pierce agreed that this was reasonable. Tex. Bus. & Comm. Code § 15.50(a).

17

**Reply Point 6:** **The Court shall reform the covenant if restraints are unreasonable.**

Section 15.51(c) of Covenant Not to Compete Act provides that *if* the covenant is found to be ancillary to or part of an otherwise enforceable agreement *but* contains restraints that are not reasonable and impose a greater restraint than necessary, *the court shall reform* the covenant to the extent necessary and enforce the covenant as reformed. Tex. Bus. & Comm. Code §15.51(c) (emphasis added). As an initial matter, there were no findings entered by the trial court and the trial court did not reform the agreement.

Synergy argues that, since NeuroTex did not affirmatively seek reformation, the court is not required to reform the covenant. (Response 48). While the language of the Act does not require NeuroTex to ask for reformation, the record shows that, in its Second Amended Original Petition, NeuroTex plead, "if the covenant is not enforceable to the fullest extent provided, Plaintiff requests the Court enforce such covenant to the extent provided by law." (CR 461). Thus Synergy's argument here fails.

Synergy further argues that, since NeuroTex only sought to enforce the restriction in its summary judgment response "to the extent it encompassed counties where Pierce actually worked when employed by NeuroTex and for those

18

doctors and hospitals," it has waived its right to reformation. (CR 846). As the case law shows, such reformation, pursuant to section 15.51, is a remedy that is only available at a final hearing, whether on the merits or by summary judgment, and not as interim relief. *Sentinel Integrity Solutions, Inc. v. Mistras Grp., Inc.*, 414 S.W.3d 911, 920 (Tex. App.—Houston [1ˢᵗ Dist.] 2013, pet. denied) citing *Gray Wireline Serv., Inc. v. Cavanna*, 374 S.W.3d 464, 470 (Tex.App.-Waco 2011, no pet.). Thus, NeuroTex's request in its pleading, and in its summary judgment response, is sufficient. Synergy cites to the *Sentinel* case in support of such waiver, however this does not help it as in *Sentinel*, the trial court did reform the covenant, the issue there was the timing of such reformation. *Id.*

NeuroTex applies each of the restraints to its legitimate business interests in enforcing the provisions, in both its summary judgment response and its Brief, and reurges those arguments herein. (CR 835, 837; App. Brief 45-46; 50-56).

**Reply Point 7:**          **Damages are not foreclosed by statute on the claim for tortious interference.**

NeuroTex maintains its position that Synergy's grounds for summary judgment relief are vague and confusing. (App. Brief 26). Furthermore, in its opening argument, NeuroTex specifically stated that the trial court abused its discretion and acted without any reference to any guiding rules and principles when it granted Synergy's Motion for Summary Judgment. (App. Brief 14). As

19

explained in the case cited to by Synergy, even the statement, "THE TRIAL COURT ERRED IN GRANTING THE MOTION FOR SUMMARY JUDGMENT" would be sufficient to allow argument as to all the possible grounds upon which summary judgment should have been denied. *Malooly Brothers, Inc. v. Napier,* 461 S.W.2d 119, 120 (Tex.1970). Thus, NeuroTex has not waived its argument.

Furthermore, as the Fort Worth Court of Appeals explained, citing to Tex. R. App. P. 38.3, "[t]he appellant may file a reply brief addressing any matter in the appellee's brief." *Ferrant v. Graham Associates, Inc.,* No. 02-12-00190-CV, 2014 WL 1875825, at *8 (Tex. App.—Fort Worth May 8, 2014, no pet.)(mem. op.). Texas courts have a long history of considering an issue raised for the first time in a reply when, like here, it was fully briefed by appellee in the response. *Id;* *McKelvy v. Barber,* 381 S.W.2d 59, 62 (Tex. 1964); *McAlester Fuel Co. v. Smith Int'l, Inc.,* 257 S.W.3d 732, 737 (Tex.App.-Houston [1st Dist.] 2007, pet. denied) (considering issue first raised in reply as responsive to appellee's response); *Hutchison v. Pharris,* 158 S.W.3d 554, 564 (Tex.App.-Fort Worth 2005, no pet.) (same); *Bennett v. Coghlan,* No. 01–04–00104–CV, 2007 WL 2332969, *4 n. 7 (Tex.App.-Houston [1st. Dist.] Aug. 16, 2007, pet. denied) (mem.op.) (considering issue raised for first time in reply where it had been "fully briefed" by appellee in his response). Thus, this issue is properly before this Court.

20

While it is true that damages are an element of NeuroTex's tortious interference claim, Synergy argues erroneously that reformation of the noncompete precludes damages and therefore forecloses NeuroTex's tortious interference claim. (Response 53). It appears that Synergy is seeking to avail itself of the relief afforded to the promisor under the Act. (*Id.*) Neither the Act, the case law cited by Synergy, nor its argument, supports this theory. Synergy has cited to no law, and NeuroTex has found none, which stands for the proposition urged by Synergy here, that in the event the covenant is found to be otherwise enforceable, but is reformed, damages are foreclosed against <u>one who tortiously interferes</u>. To the contrary, the statute specifically states that, in those circumstances, the court may not award the promisee damages for <u>the breach of the covenant.</u> Tex. Bus. & Comm. Code §15.51(c) (emphasis added). Thus, it appears that the foreclosure argument is not Synergy's to make. Furthermore, it is Synergy's burden to show its damages for tortious interference are foreclosed *as a matter of law*. (CR 168). Notably, a claim for tortious interference does not require that a contract be breached.

Synergy failed to meet its burden and the trial court erred in granting summary judgment as a matter of law to Synergy on the issue of damage foreclosure.

## PRAYER

Without waiver of all other grounds for relief sought in Appellant's Brief, NeuroTex requests this Court consider this reply along with the previously filed Brief, and reverse the trial court's orders granting Appellee's motion for summary judgment, remand the cause to the trial court, and grant Appellant's court costs.

Respectfully submitted,

WIGINGTON & DANKESREITER, L.L.P.

By: _____

Eric F. Dankesreiter
Texas Bar No. 00796434
ericd@texasbuslaw.com
Debra S. Crafton
Texas Bar No. 24050458
dcrafton@texasbuslaw.com
3010 Broadmoor Lane
Flower Mound, Texas 75022
(972) 691-3677
(972) 691-5688 – facsimile

Attorneys for Appellant,
Neurodiagnostic Tex, LLC.

22

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been sent to the following via electronic service provider pursuant to Tex. R. Civ. P. 21a, on this 26th day of March, 2015:

Carter Hampton
Hampton & Associates
Flat Iron Building, 4th Floor
1000 Houston Street
Fort Worth, Texas 76102

Brent Shellhorse
Whitaker Chalk Swindle & Schwartz, PLLC
301 Commerce Street, Suite 3500
Fort Worth, Texas 75102

_____
Counselor

## CERTIFICATE OF COMPLIANCE

Relying on the word count function in the word processing software used to produce this document, I certify that sections covered by TRAP 9.4(i)(1) contain 4789 words.

_____
Counselor